```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                    WESTERN DIVISION
```

| | | |
|---|---|---|
| ODYSSEY MEDICAL, INC. | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-2797 |
| | ) | |
| AUGEN OPTICOS, S.A. de C.V., | ) | |
| d/b/a AUGEN OPTICS and BLUE | ) | |
| COVE CORP. d/b/a AUGEN OPTICS, | ) | |
| | ) | |
|     Defendants. | ) | |

**ORDER DENYING DEFENDANT BLUE COVE CORP.'S MOTION TO DISMISS, STAY OR TRANSFER**

Before the Court is the January 31, 2011 Motion to Dismiss, Stay or Transfer in Light of Previously Filed Case in California Involving Blue Cove Corp. and Odyssey Medical, Inc. ("Motion") filed by Defendant Blue Cove Corp. ("Blue Cove"). (Def. Blue Cove Corp.'s Mot. to Dismiss, Stay or Transfer in Light of Previously Filed Case in California Involving Blue Cove Corp. and Odyssey Medical, Inc., ECF No. 24.) ("Blue Cove's Mot.") Plaintiff Odyssey Medical, Inc. ("Odyssey") responded in opposition on February 11, 2011. (Pl.'s Resp. to Blue Cove Corp. d/b/a Augen Optics' Mot. to Dismiss, Stay, or Transfer, ECF No. 25.) ("Odyssey's Resp.") For the following reasons, Blue Cove's Motion is DENIED.

    **I.   Background**

On November 6, 2010, Odyssey filed a complaint against Defendant Augen Opticos, S.A. de C.V. ("Augen Opticos") in this Court ("Odyssey's First Complaint").  (Compl. for Injunctive Relief and Money Damages, ECF No. 1.)  Odyssey alleges that it manufactures and sells ophthalmic products in interstate commerce, including its patented punctual occluder under the trademark PARASOL.  (See id. ¶ 7.)  Odyssey owns the PARASOL mark and registered it on December 15, 1998.  (See id. ¶ 10.)  According to Odyssey, Augen Opticos, a competitor, has used confusingly similar marks, including PARASOL and AUGEN PARASOL, on Augen Opticos' ophthalmic lenses, causing confusion in purchasers who incorrectly believe that Odyssey and Augen Opticos are affiliated or that Odyssey has sponsored, endorsed, or approved Augen Opticos' products.  (See id. ¶¶ 2, 7, 12-13, 16.)  Odyssey asserts that Augen Opticos' use of those marks makes it liable for, among other things, trademark infringement, false designation of origin, and dilution of Odyssey's PARASOL mark.  (See id. ¶¶ 25-41.)

On December 17, 2010, Blue Cove filed a complaint against Odyssey in the United States District Court for the Southern District of California.  (Compl., ECF No. 24-2.)  In that complaint, Blue Cove alleges that it is the exclusive licensee and distributor of Augen Opticos' products in the United States and that Odyssey's First Complaint against Augen Opticos in this

2

Court has given rise to a reasonable apprehension that Odyssey would sue Blue Cove for its continued use of the term AUGEN PARASOL in marketing and selling the ophthalmic lenses Augen Opticos produces. (See id. ¶¶ 1, 19-20.) Blue Cove requests a declaratory judgment that its use of the term AUGEN PARASOL is not likely to be confused with Odyssey's use of the federally-registered trademark PARASOL and does not infringe Odyssey's trademark. (See id. ¶¶ 2, 22.) Blue Cove asserts that Augen Opticos is "a separate and independent Mexican company doing business outside the territorial jurisdiction of the United States," but contends that Blue Cove has standing to challenge Odyssey's right to prevent Blue Cove from using the term AUGEN PARASOL "[b]y virtue of its affiliation with AUGEN OPTICOS," "a related but independent company associated with BLUE COVE." (Id. ¶¶ 1, 13-14, 19.)

On December 27, 2010, Odyssey filed an amended complaint in this Court adding Blue Cove as a defendant and alleging that Blue Cove does business within the United States as Augen Optics, the business name used by Augen Opticos in the United States. (See First Am. Compl. for Injunctive Relief and Money Damages ¶¶ 2-3, ECF No. 13.) Odyssey also alleges that the address of Blue Cove's principal place of business is the same as Augen Opticos' address. (See id.) Odyssey seeks relief against Augen Opticos and Blue Cove for, among other things,

3

trademark infringement, false designation of original, and dilution of Odyssey's PARASOL mark. (See id. ¶¶ 4, 33-49.)

On January 31, 2011, Blue Cove moved to dismiss Odyssey's action against it in this Court. (Blue Cove's Mot. 1.) Blue Cove argues that, because it was the first party to file suit in the controversy between it and Odyssey, this Court should dismiss it from Odyssey's action in this Court under the first-to-file rule. (See id. at 1-3; Def. Blue Cove Corp.'s Mem. in Supp. of Mot. to Dismiss, Stay or Transfer in Light of Previously Filed Case in California Involving Blue Cove Corp. and Odyssey Medical, Inc. 1-4, ECF No. 24-1 ("Blue Cove's Mem.").) In the alternative, Blue Cove asks the Court to stay Odyssey's action against it pending the outcome of a motion to dismiss Odyssey has filed in the Southern District of California, or transfer Odyssey's action against it to the Southern District of California. (See Blue Cove's Mot. 3; Blue Cove's Mem. 4.)

In response to Blue Cove's Motion, Odyssey argues that its action against Blue Cove was filed first under the first-to-file rule and that, as the action of the natural plaintiff, Odyssey's action against Blue Cove in this Court should take precedence over Blue Cove's action against Odyssey in the Southern District of California. (See Odyssey's Resp. 1-3, 5-9.)

4

On March 31, 2011, Odyssey filed notice with this Court of a March 28, 2011 order by the United States District Court for the Southern District of California finding that Odyssey's action against Blue Cove in this Court was the first action filed. (See Notice of Subsequent Ruling Bearing on Def. Blue Cove Corp.'s d/b/a Augen Optics Mot. to Dismiss, Stay or Transfer, ECF No. 32; Order, ECF No. 32-1 ("California Order").) The United States District Court for the Southern District of California stayed Blue Cove's action pending this Court's decision on jurisdictional and venue issues raised by Augen Opticos and Blue Cove in other motions before this Court. (See California Order 5.)

**II. Analysis**

"The first-to-file rule . . . is a 'well-established doctrine that encourages comity among federal courts of equal rank.'" Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 551 (6th Cir. 2007) (quoting AmSouth Bank v. Dale, 386 F.3d 763, 791 n.8 (6th Cir. 2004)). "The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" Id. (quoting Zide Sport Shop of Ohio, Inc. v. Tobergte Assocs., Inc., 16 F. App'x 433, 437 (6th Cir. 2001)).

5

"Courts have identified three factors to consider in determining whether to invoke the first-to-file rule: '(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake.'" Clear!Blue, LLC v. Clear Blue, Inc., 521 F. Supp. 2d 612, 614-15 (E.D. Mich. 2007) (quoting Plating Res., Inc. v. UTI Corp., 47 F. Supp. 2d 899, 903-04 (N.D. Ohio 1999)); accord Siegfried v. Takeda Pharm. N. Am., Inc., No. 1:10-CV-02713-JG, 2011 WL 1430333, at *5 (N.D. Ohio Apr. 14, 2011); Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005).  "However, 'the first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment.'"  Certified Restoration Dry Cleaning Network, 511 F.3d at 551 (quoting AmSouth Bank, 386 F.3d at 791 n.8).  The Sixth Circuit Court of Appeals has explained:

> District courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing. Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping.

Id. at 551-52 (quoting Zide Sport Shop, 16 F. App'x at 437). "Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive

6

claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." Id. at 552 (quoting AmSouth Bank, 386 F.3d at 791 n.8).

Here, the first-to-file rule favors Odyssey's action against Blue Cove in this Court. In analyzing the first factor, "the date that an original complaint is filed controls," Zide Sport Shop, 16 F. App'x at 437 (citing Plating Res., 47 F. Supp. 2d at 904), not the date of an amended complaint even if a party was only added in an amended complaint after filing suit elsewhere, see Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc., 544 F. Supp. 2d 949, 958 (N.D. Cal. 2008); Shire U.S., Inc. v. Johnson Matthey, Inc., 543 F. Supp. 2d 404, 409-10 (E.D. Pa. 2008). Odyssey filed suit against Augen Opticos in this Court on November 6, 2010, based on Augen Opticos' alleged infringement of Odyssey's PARASOL mark on Augen Opticos' products. (See Compl. for Injunctive Relief and Money Damages.) Blue Cove filed suit against Odyssey in the Southern District of California on December 17, 2010, seeking a declaratory judgment that using the term AUGEN PARASOL in marketing and selling Augen Opticos' products does not infringe Odyssey's rights. (See Compl. ¶¶ 1, 22, ECF No. 24-2.) Odyssey's action in this Court was filed first although Blue Cove was subsequently added as a party on December 27, 2010. The first factor favors Odyssey's

7

action proceeding in this Court. See Zide Sport Shop, 16 F. App'x at 437; Intersearch Worldwide, 544 F. Supp. 2d at 958; Shire U.S., 543 F. Supp. 2d at 409-10. The United States District Court for the Southern District of California reached the same conclusion. (See California Order 3.)

The second factor also favors Odyssey's action against Blue Cove in this Court. As demonstrated by the United States District Court for the Southern District of California's analysis, Blue Cove is not a separate and distinct entity under the first-to-file rule because it has held itself out interchangeably with Augen Opticos in dealings with the Southern District of California and with the U.S. Patent and Trademark Office and shares a physical office with Augen Opticos in San Diego, California. (See id.) Augen Opticos' and Blue Cove's websites have identical IP addresses, the content of their websites is identical, and nowhere on either website is there a reference to Blue Cove. (See id. at 4.) Blue Cove admitted in its California action that Augen Opticos is a related company, associated with it. (See Compl. ¶ 19, ECF No. 24-2.) Odyssey amended its complaint to add Blue Cove as a party.[1] (See First Am. Compl. for Injunctive Relief and Money Damages ¶ 3.) Under these circumstances, the similarity of the parties in the two

---

[1] That is not to suggest that Blue Cove is properly a party in Odyssey's action in this Court. Several motions relating to jurisdiction and venue remain pending.

8

actions favors Odyssey's action, the first to be filed. See Certified Restoration Dry Cleaning Network, 511 F.3d at 551; Clear!Blue, 521 F. Supp. 2d at 614-15.

The third factor also favors Odyssey's action against Blue Cove in this Court. The central issue in this action and in Blue Cove's action against Odyssey in California is the same: whether the marks on products manufactured by Augen Opticos infringe Odyssey's trademark. (Compare Compl. ¶ 22, ECF No. 24-2 (alleging that Blue Cove's use of the AUGEN PARASOL mark is a fair use and does not infringe Odyssey's trademark), with Compl. for Injunctive Relief and Money Damages ¶¶ 7, 10, 12-13, 16, 25-30 (alleging that the marks on Augen Opticos' products infringe Odyssey's trademark), and First Am. Compl. for Injunctive Relief and Money Damages ¶¶ 33-38 (alleging that Augen Opticos and Blue Cove have used infringing marks).) The similarity of these issues favors Odyssey's action, the first to be filed. See Certified Restoration Dry Cleaning Network, 511 F.3d at 551; Clear!Blue, 521 F. Supp. 2d at 614-15.

Because the actions in this Court and in the Southern District of California involve nearly identical parties and issues, the first-to-file rule favors Odyssey's action in this Court. See Certified Restoration Dry Cleaning Network, 511 F.3d at 551. All three factors support this conclusion. See Clear!Blue, 521 F. Supp. 2d at 614-15. Therefore, Blue Cove's

9

argument that the first-to-file rule supports dismissing, staying, or transferring Odyssey's action against Blue Cove is not well-taken.

Even if first-to-file rule favored dismissing, staying, or transferring Odyssey's action, this Court would decline to do so because of the nature of Blue Cove's suit in California. As the Sixth Circuit has explained, "the first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment." Certified Restoration Dry Cleaning Network, 511 F.3d at 551 (quoting AmSouth Bank, 386 F.3d at 791 n.8). If Blue Cove's declaratory judgment action had been filed first, Odyssey's action against Blue Cove and Augen Opticos for trademark infringement would be a coercive action filed subsequent to Blue Cove's action. That Blue Cove has admitted in California that its declaratory judgment action was an anticipatory suit supports giving way to a later coercive action. See id. at 551-52. That Blue Cove has seemingly engaged in forum shopping by filing suit in California further supports giving way. See id. The Sixth Circuit has said that:

> Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum. Allowing declaratory actions in these situations can deter settlement negotiations and encourage races to the courthouse, as potential

10

>  plaintiffs must file before approaching defendants for settlement negotiations, under pain of a declaratory suit. This also dovetails with the previous factor: where a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum—a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act.

AmSouth Bank, 386 F.3d at 788 (citations omitted).

This Court would not dismiss, stay, or transfer Odyssey's action against Blue Cove even if the first-to-file rule supported doing so. See id.; see also Foreword Magazine, Inc. v. OverDrive, Inc., No. 1:10-cv-1144, 2011 WL 31044, at *2 (W.D. Mich. Jan. 5, 2011) ("As the Sixth Circuit has noted, the first-to-file rule is discretionary and will generally yield to the stronger policy that prefers the coercive action over declaratory judgment actions." (citing Certified Restoration Dry Cleaning Network, 511 F.3d at 552)); Long v. CVS Caremark Corp., No. 5:09CV1392, 2010 WL 547143, at *4 (N.D. Ohio Feb. 11, 2010) ("The declaratory judgment exception is a tool used by courts to combat procedural fencing where courts refuse to give deference to declaratory judgment actions filed in anticipation of a substantive lawsuit. Courts refuse to apply the first-to-file rule under these circumstances because doing so would unfairly deprive a plaintiff of his choice of forum." (citing Certified Restoration Dry Cleaning Network, 511 F.3d at 552)).

11

**III. Conclusion**

For the foregoing reasons, Blue Cove's Motion is DENIED.

So ordered this 27th day of June, 2011.

                                      s/ Samuel H. Mays, Jr.
                                      SAMUEL H. MAYS, JR.
                                      UNITED STATES DISTRICT JUDGE