# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| ODYSSEY MEDICAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-2797 |
| | ) | |
| AUGEN OPTICOS, S.A. de C.V., | ) | |
| d/b/a AUGEN OPTICS and BLUE | ) | |
| COVE CORP. d/b/a AUGEN OPTICS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Odyssey Medical, Inc. ("Odyssey") brings this action against Defendants Augen Opticos, S.A. de C.V. d/b/a Augen Optics ("Augen Opticos") and Blue Cove Corp. d/b/a Augen Optics ("Blue Cove") for violation of Odyssey's intellectual property rights. (See First Am. Compl. For Injunctive Relief and Money Damages, ECF No. 13 ("Am. Compl.")). Odyssey filed suit against Augen Opticos on November 6, 2010 (See Compl. for Injunctive Relief and Money Damages, ECF No. 1.), and amended its complaint to include Blue Cove on December 27, 2010. (See Am. Compl.) In its Amended Complaint, Odyssey contends that both Augen Opticos and Blue Cove do business in the United States as Augen Optics. (Am. Compl. ¶¶ 2-3.) On January 31, 2011, Augen Opticos filed a Motion to Dismiss pursuant to

Federal Rules of Civil Procedure 12(b)(2) and (b)(5). (Def.'s Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5) for Insufficient Service of Process and Pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction, ECF No. 11 ("Augen's Original Mot."); Def.'s Mem. in Supp. of Mot. to Dismiss Based on Insufficient Service of Process and Lack of Personal Jurisdiction, ECF No. 12 ("Augen's Original Mem.").) Augen Opticos argues that there has been insufficient service of process and that this Court lacks personal jurisdiction. (Id.)

On March 9, 2011, Odyssey filed a motion for jurisdictional discovery. (Mot. for Jurisdictional Disc. Related to Def. Augen Opticos, Mem. In Supp., and Local Rule 7.2 Certificate of Consultation, ECF No. 26.) This Court referred Odyssey's discovery motion to Magistrate Judge Tu M. Pham, who granted it on April 8, 2011. (Order of Reference, ECF No. 28; Order Granting Pl.'s Mot. for Jurisdictional Disc., ECF No. 39.) Jurisdictional discovery is complete, and both Odyssey and Augen Opticos have filed supplemental memoranda addressing the motion to dismiss. (Pl.'s Supplemental Mem. In Opp'n to Augen Opticos' Motion to Dismiss, ECF No. 70 ("Odyssey's Supp. Mem."); Def. Augen Opticos' Supplemental Reply to Pl.'s Supplemental Mem. in Opp'n to Augen Opticos' Mot. to Dismiss, ECF No. 71 ("Augen Opticos' Supp. Reply").)

## I. Background

On November 6, 2010, Odyssey filed a complaint against Augen Opticos in this Court. (Compl. for Injunctive Relief and Money Damages, ECF No. 1 ("Odyssey's First Compl.").) Odyssey is a corporation organized under the laws of Tennessee, with its principal place of business at 2975 Brother Boulevard, Bartlett, Tennessee. (Id. ¶ 1.) Odyssey manufactures and sells ophthalmic products in interstate commerce, including its patented punctual occluder, under the trademark PARASOL. (See id. ¶ 7.) Odyssey owns the PARASOL mark and registered it on December 15, 1998. (See id. ¶ 10.) According to Odyssey, Augen Opticos, a competitor, has used confusingly similar marks, including PARASOL and AUGEN PARASOL, on Augen Opticos' ophthalmic lenses, confusing purchasers who incorrectly believe that Odyssey and Augen Opticos are affiliated or that Odyssey has sponsored, endorsed, or approved Augen Opticos' products. (See id. ¶¶ 12-13, 16.) Odyssey's initial complaint asserts that Augen Opticos' use of confusingly similar marks makes it liable for: 1) infringement of federal and state trademark and trade name rights and interests protected by 15 U.S.C. §§ 114, et seq. and Tennessee common law; 2) false designation of origin and misrepresentation in commerce in violation of 15 U.S.C. § 1125(a); 3) unfair competition with Odyssey; 4) Tennessee Consumer Protection Act violations; and 5) dilution of Odyssey's PARASOL mark in violation of 15 U.S.C. § 1125(c). (Id. ¶ 3.)

On December 17, 2010, Blue Cove filed a complaint for declaratory judgment against Odyssey in the United States District Court for the Southern District of California. (Compl. For Declaratory J., ECF No. 24-2 ("Blue Cove Declaratory J. Compl.").) In that complaint, Blue Cove claims that it is the exclusive licensee and distributor of Augen Opticos' products in the United States and that Odyssey's first complaint against Augen Opticos in this Court has created a reasonable apprehension that Odyssey would sue Blue Cove for its continued use of the term AUGEN PARASOL in marketing and selling the ophthalmic lenses Augen Opticos produces. (See id. ¶¶ 1, 19-20.) Blue Cove requests a declaration that its use of the term AUGEN PARASOL is not likely to be confused with Odyssey's use of the federally-registered trademark PARASOL and does not infringe Odyssey's trademark. (See id. ¶¶ 2, 22.) Blue Cove asserts that Augen Opticos is "a separate and independent Mexican company doing business outside the territorial jurisdiction of the United States," but contends that Blue Cove has standing to challenge Odyssey's right to prevent Blue Cove from using the term AUGEN PARASOL "[b]y virtue of its affiliation with AUGEN OPTICOS," "a related but independent company associated with BLUE COVE," and Blue Cove's use of the term "AUGEN PARASOL." (Id. ¶¶ 1, 13-14, 19-20.)

On December 27, 2010, Odyssey filed an amended complaint in this Court, adding Blue Cove as a defendant and alleging that Blue Cove does business in the United States as Augen Optics, the business name used by Augen Opticos in the United States. (Am. Compl. ¶¶ 2-3.) Odyssey also alleges that the address of Blue Cove's principal place of business is the same as Augen Opticos' address. (Id. ¶ 3.) Odyssey seeks relief against Augen Opticos and Blue Cove for: 1) infringement of federal and state trademark and trade name rights and interests protected by 15 U.S.C. §§ 114, et seq. and Tennessee common law; 2) false designation of origin and misrepresentation in commerce in violation of 15 U.S.C. § 1125(a); 3) unfair competition with Odyssey; 4) Tennessee Consumer Protection Act violations; and 5) dilution of Odyssey's PARASOL mark in violation of 15 U.S.C. § 1125(c). (See id. ¶ 4.)

## II. JURISDICTION

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338(a) & (b), and 15 U.S.C. § 1121. Odyssey's state law causes of action are substantially related to its federal claims and this Court has supplemental jurisdiction over the state law causes of action under 28 U.S.C. § 1367.

## III. STANDARD OF REVIEW

### A. Service of Process

When a defendant files a motion to dismiss for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5), the plaintiff "bears the burden of executing due diligence in perfecting service of process and showing that service was made." Mullins v. Kalns, No. 99-4031, 2000 U.S. App. LEXIS 28063, at *8-9 (6th Cir. Nov. 3, 2000); see also Portis v. Caruso, No. 1:09-cv-846, 2010 U.S. Dist. LEXIS 94868, at *28 (S.D. Mich. July 28, 2010) ("The plaintiff bears the burden of proving that proper service was effected."); Grubb v. Collins, No. 1:09-cv-263, 2010 U.S. Dist. LEXIS 90984, at *2 (S.D. Ohio July 4, 2010) (noting that the plaintiff bears the burden of showing that proper service has been made).

When "addressing a motion to dismiss based on ineffective service of process, the [c]ourt necessarily must review matters outside the pleadings." Pers. Brokerage Serv., LLC v. Lucius, No. 05-1663, 2006 WL 2975308, at *1 (D. Minn. Oct. 16, 2006). "The court may weigh and determine disputed issues of fact on a Rule 12(b)(5) motion." Cranford v. United States, 359 F. Supp. 2d 981, 984 (E.D. Cal. 2005). To assist the court in determining factual issues, the "[p]arties may submit affidavits and exhibits with a motion to dismiss under Rule 12(b)(5)." Travelers Cas. & Sur. Co. v. Telstar Constr. Co., 252 F. Supp. 2d 917, 922 (D. Ariz. 2003). "The court may receive affidavits introduced by the parties when considering a Rule 12(b)(5)

motion," Vance Prods., Inc. v. Oasis Med., Inc., No. IP 01-0585-C-B/S, 2002 U.S. Dist. LEXIS 4889, at *4 (S.D. Ind. March 20, 2002), and "may receive evidence introduced by the parties." Chatman v. Condell Med. Ctr., No. 99 C 5603, 2002 WL 737051, at *2 (N.D. Ill. April 22, 2002); see also Hickory Travel Sys. V. Tui Ag, 213 F.R.D. 547, 555 (N.D. Cal. 2005) (allowing jurisdictional discovery if factfinding is needed to prove "proper service," but finding it unnecessary in the matter at hand). Both the plaintiff and defendant may produce "affidavits, discovery materials, and other admissible evidence." Mintel Learning Tech, Inc. v. Beijing Kaidi Educ. Dev. Co., Ltd., No. C 06-7541 PJH, 2007 U.S. Dist. LEXIS 27213, at *2 (N.D. Cal. March 28, 2007); see also Travelers Cas. & Sur. Co., 252 F. Supp. 2d at 922-23 (cataloging cases where courts considered affidavits and exhibits in response to motions to dismiss under Rule 12(b)(5)).

The Sixth Circuit has not addressed how the plaintiff may satisfy its burden of proof for purposes of a motion to dismiss, but other Circuits have. "[T]o make a prima facie showing [of service], the movant must simply produce a return of service identifying the recipient." Relational, LLC v. Hodges, 627 F.3d 668, 672 (7th Cir. 2010). Such an affidavit "can be overcome only by strong and convincing evidence." SEC v. Internet Solutions for Bus., Inc., 509 F.3d 1161, 1166 (9th Cir. 2007)

(quoting O'Brien v. R.J. O'Brien & Assocs., Inc., 998 F.2d 1394, 1398 (7th Cir. 1993)). Although a "process server's affidavit of service establishes a prima facie case" of service, "[a] defendant's sworn denial of receipt of service . . . rebuts the presumption." Old Republic Ins. Co. v. Pac. Fin. Servs. Of Am., Inc. 301 F.3d 54, 57 (2d Cir. 2002); see also People's United Equip. Fin. Corp. v. Hartmann, No. 10-20875, 2011 U.S. App. LEXIS 16560, at *5, (5th Cir. Aug. 9, 2011) (requiring "strong and convincing" evidence to overcome a plaintiff's prima facie evidence).

The weight of authority is clear that "[a] process servers' affidavit of service . . . establishes a presumption of service." McCombs v. Granville Exempted Vill. Sch. Dist., No. 2:07-cv-00495, 2009 U.S. Dist. LEXIS 14044, at *12 (S.D. Ohio, Feb. 24, 2009) (quoting State Farm Automobile Ins. Co. v. CPT Medical Service, Inc., No. 04-CV-5045, 2005 U.S. Dist. LEXIS 44862 (E.D.N.Y. Oct. 6, 2005)). The defendant has the burden of rebutting the plaintiff's prima facie case.

### B. Personal Jurisdiction

Motions to dismiss for lack of personal jurisdiction are considered under a "procedural scheme" that is "well-settled." Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). When a defendant moves to dismiss a case on personal jurisdiction grounds, the plaintiff "need only make a prima

facie showing that personal jurisdiction exists." Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007) (quoting Theunissen, 935 F.2d at 1458).

"As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." Century Bus. Servs. v. Bryant, 69 F. App'x 306, 314 (6th Cir. 2003) (quoting Welsh v. Gibbs, 631 F.2d 436, 438 (6th Cir. 1980)). "[A] district court has discretion to decide a 12(b)(2) motion on affidavits alone, to permit discovery in aid of a ruling, or to conduct an evidentiary hearing to resolve any factual questions." Cleveland Browns Football Co., LLC v. Hawaii-Pacific Apparel, 90 F. App'x 868, 869 (6th Cir. 2004); see also Wright v. MGM Grand Casino, No. 09-14853, 2011 U.S. Dist. LEXIS 68498, at *3 (E.D. Mich. May 20, 2011) (quoting Theunissen, 935 F.2d at 1458) (holding that a court "may permit discovery in aid of deciding the motion."). The court "has discretion to select which method it will follow." Theunissen, 935 F.2d at 1458; see also Intera Corp v. Henderson, 428 F.3d 605, 614 n.7 (6th Cir. 2005) (stating that "[i]f the district court rules on a [motion to dismiss] before trial . . . it has discretion to . . . permit discovery, which would aid in resolution of the motion."); Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir. 1998) ("[T]he court may determine the motion on the basis of affidavits alone;

or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.").

The plaintiff's burden to defeat a motion to dismiss for lack of personal jurisdiction is "relatively slight, and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." <u>Estate of Thomson v. Toyota Motor Corp.</u>, 545 F.3d 357, 360 (6th Cir. 2008) (internal citations and quotations omitted). The court should not consider any controverting assertions of the defendant. <u>Intera Corp.</u>, 428 F.3d at 614. Absent an evidentiary hearing, a court "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." <u>Neogen Corp v. Neo Gen Screening, Inc.</u>, 282 F.3d 883, 887 (6th Cir. 2002); <u>see also Intera Corp</u>, 428 F.3d at 613 (holding the court must review the evidence "in the light most favorable to the Plaintiffs."). "Dismissal . . . is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." <u>Bridgeport Music, Inc. v. Still N the Water Publ'g</u>, 327 F.3d 472, 477 (6th Cir. 2003) (quoting <u>Kerry Steel, Inc. v. Paragon Indus.</u>, 106 F.3d 147, 149 (6th Cir. 1997)); <u>see also Dean</u>, 134 F.3d at 1273 (holding that, even if there is discovery, a plaintiff need only make a prima facie showing of jurisdiction). The Court is not required "to ignore undisputed factual representations of the defendant which are

consistent with the representations of the plaintiff."
<u>Bridgeport Music, Inc.</u>, 327 F.3d at 477.

To make its prima facie showing, the plaintiff need only "establish[] with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." <u>Rice v. Karsch</u>, 154 F. App'x 454, 458 (6th Cir. 2005) (quoting <u>Neogen Corp</u>, 282 F.3d at 887). "Dismissal under Rule 12(b)(2) is proper only if the specific facts alleged by Vanderbilt Mortgage, taken as a whole, fail to state a prima facie case for personal jurisdiction." <u>Vanderbilt Mrtg. & Fin. v. First Franklin Fin. Corp.</u>, No. 3:10-CV-7, 2011 U.S. Dist. LEXIS 40868, at *2-3 (E.D. Tenn. Apr. 14, 2011).

When a federal court's subject matter jurisdiction stems from a federal question, personal jurisdiction exists if the defendant is "amenable to service of process under the forum state's long-arm statute and if the existence of personal jurisdiction would not deny the defendant due process." <u>Bridgeport Music, Inc.</u>, 327 F.3d at 477 (internal quotations and citations omitted). Tennessee courts construe the state's long-arm statute to be coextensive with the limits of due process. Tenn. Code Ann. § 20-2-214(a); <u>J.I. Case Corp. v. Williams</u>, 832 S.W.2d 530, 532 (Tenn. 1992). Thus, federal courts in Tennessee "employ federal constitutional due process analysis to determine whether there is personal jurisdiction." <u>Smith v. Home Depot</u>

USA, Inc., 294 F. App'x 186, 189 (6th Cir. 2008); see also
Intera Corp, 428 F.3d at 616.

Jurisdiction may be general or specific. Bird v. Parsons,
289 F.3d 865, 873 (6th Cir. 2002). General jurisdiction is
appropriate only when "a defendant's contacts with the forum
state are of such a continuous and systematic nature" that
personal jurisdiction would be proper "even if the action is
unrelated to the defendant's contacts with the state." Third
Nat'l Bank v. WEDGE Group, Inc., 882 F.2d 1078, 1089 (6th Cir.
1989). Specific jurisdiction is proper when: (1) the defendant
purposefully availed itself of the privilege of acting in the
forum state or causing a consequence in the forum state; (2) the
cause of action arose from the defendant's activities in the
forum state; and (3) the consequences caused by the defendant
had a substantial enough connection to make the exercise of
jurisdiction reasonable. S. Mach. Co. v. Mohasco Indus., Inc.,
401 F.2d 374, 381 (6th Cir. 1968); see also Intera Corp, 428
F.3d at 614 (applying the Southern Machine test); Rice, 154 F.
App'x at 459 (same).

Although the Court retains the power to order an
evidentiary hearing "if written submissions raise disputed
issues of fact or seem to require determinations of
credibility," that is not necessary in this case. Ford Motor
Co. v. Great Domains, Inc., 141 F. Supp. 2d 763, 771 (E.D. Mich.

12

2001) (quoting <u>Serras v. First Tenn. Nat'l. Assoc.</u>, 875 F.2d
1212, 1214 (6th Cir. 1989)).

**IV.  Analysis**

Odyssey contends that it served Augen Opticos with process
by hand-delivering notice of the suit to one of its officers.
Odyssey also contends that Augen Opticos' contacts with
Tennessee were sufficiently significant to give rise to specific
personal jurisdiction; and that, in the alternative, Augen
Opticos consented to suit in Tennessee through its alter ego,
Blue Cove.  Odyssey's first two contentions are well taken.
Odyssey served process on Augen Opticos, and Augen Opticos'
contacts with Tennessee were significant enough to give rise to
specific personal jurisdiction.

**A.  Service of Process**

The Federal Rules of Civil Procedure provide for service on
a foreign corporation by "delivering a copy of the summons and
of the complaint to an officer, a managing or general agent, or
any other agent authorized by appointment or by law to receive
service of process."  Fed. R. Civ. P. 4(h)(1)(B).

Augen Opticos argues that Odyssey did not comply with Rule
4(h)(1).  (Augen's Original Mem. 2.)  Augen Opticos contends
that Odyssey served papers on Patricia Machado ("Patricia
Machado"), Vice-President of Business Development for Blue Cove,
who has no relation to Augen Opticos.  (Augen Opticos' Supp.

13

Reply 3.)[1]  Because the papers were not served on Marco Machado-Torres ("Marco Machado"), the President of Augen Opticos, Augen Opticos argues that service was insufficient.  (Id. 2.)

Odyssey contends that it served process on Patricia Machado at Augen Opticos' United States address, 6020 Progressive Avenue, Suite 200, San Diego, California 92154.  (Odyssey's Supp. Mem. 3.)  Odyssey also states that Patricia Machado was the vice-president of Augen Opticos and so qualifies as an officer for the purpose of Rule 4(h)(1).  (Id. 3.)  Odyssey submits several pieces of evidence to support its position.

Odyssey has provided documents from the U.S. Patent and Trademark Office's ("U.S.P.T.O.") website filed by Augen Opticos.  (Decl. of Russel H. Walker, ECF No. 26-1 ("Walker Decl.").)  These documents include several trademark applications in which Patricia Machado lists herself as Vice-President of Business Development for Augen Opticos on forms she filed on its behalf.  (See Walker Decl., Exs. 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26,  & 28, ECF-No. 26-1 ("Trademark Applications").)  Odyssey has also provided a copy of a transcript from a settlement conference before United States District Judge Barbara L. Major in the Southern District of California, where Patricia Machado states that she is the "Vice

---

[1] Augen Opticos states that Patricia Machado is the daughter of Marco Machado-Torres, who owns Augen Opticos and Blue Cove.  (Augen Opticos' Supp. Reply 3.)

President of Business Development" for Augen Opticos.  (Walker
Decl., Ex. 30, Tr. of Settlement Conference at 3:16-18, Augen
Opticos, S.A. v. Opthonix, Inc., No. 10CV1512-IEG-BLM (S.D. Cal.
Sept. 7, 2010), ECF No. 26-1 ("Opthonix Settlement Tr.").)
Odyssey has also provided a copy of the Settlement Agreement
between Opthonix, Inc. ("Opthonix") and Augen Opticos, which
Patricia Machado signed as Augen Opticos' Vice-President.
(Settlement and Release Agreement 3, ECF No. 70-3.)

     Odyssey has provided the affidavit of Gary Bishop
("Bishop"), who states that he personally delivered service of
process to Patricia Machado at Augen Opticos' San Diego address.
(Aff. of Gary Bishop ¶ 1, ECF No. 26-2 ("Bishop Aff.").)  That
affidavit "establishes a presumption of proper service."  Kirk
v. Muskingum Cnty., No. 2:09-cv-00583, 2011 U.S. Dist. LEXIS
42276, at *12 (S.D. Ohio  April 19, 2011) (quoting McCombs, 2009
U.S. Dist. LEXIS 14044, at *3).  Bishop states that, after
serving process on Patricia Machado, he was attacked by a dog.
(Id. ¶ 5.)  Patricia Machado attempted to return the service
documents to Bishop, and, as he tried to leave the building
where Augen Opticos' offices are located, he was attacked by the
dog in the building's lobby.  (Id. ¶ 6.)  Bishop states that
Patricia Machado left the building to place the service
documents under the windshield wiper of Bishop's car and that,

when he tried to remove the documents, he was attacked by the dog a third time. (Id. ¶ 7.)

Odyssey has served process on Augen Opticos. Augen Opticos does not contest that Patricia Machado was served in Augen Opticos' office; instead, it contends that she is not an officer of Augen Opticos, relying on her affidavit. (Augen Opticos' Supp. Reply 3.) Patricia Machado's assertion that she is not an officer is not supported by the evidence. She has signed documents submitted to the U.S.P.T.O. stating she is an officer of Augen Opticos. (See Trademark Applications.) She has declared to other corporations and to a United States District Judge that she is an officer of Augen Opticos. (Compare Supp. Decl. of Patricia Machado ¶ 4, ECF No. 29-4 with Opthonix Settlement Tr. 3:16-18.) "[W]eigh[ing]" the "disputed issues of fact," Cranford, 359 F. Supp. 2d at 984, Machado's affidavit does not rise to the level of "strong and convincing evidence" that service was improper. Relational, LLC, 627 F.3d at 672. Augen Opticos was properly served.[2]

---

[2] Under the Tennessee Rules of Civil Procedure, "service may be made upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon a person who stands in such a position as to render it fair, reasonable, and just to imply the authority on his part to receive service." Murphy v. Studio 6, No. 09-2212-STA, 2010 WL 503126, at *3 (W.D. Tenn. Feb. 5, 2010) (citing Garland v. Seaboard Coastline R. Co., 658 S.W.2d 528, 530-31 (Tenn. 1983). Even if Augen Opticos were correct in claiming that Patricia Machado is not an officer of Augen Opticos, it would not be unjust or unreasonable for Odyssey to serve process on an individual "empowered with authority to act on behalf of Augen . . . in settlement negotiations . . . and to sign a series of

## B. Personal Jurisdiction

Odyssey does not allege that this Court has general jurisdiction over Augen Opticos.[3]  The sole issue is whether Augen Opticos' actions, or the actions of its purported alter ego Blue Cove, support specific personal jurisdiction.  Odyssey must meet the three prongs of the <u>Southern Machine</u> test by showing that: 1) Augen Opticos purposefully availed itself of the privilege of acting in Tennessee or causing a consequence in Tennessee; 2) the cause of action arose from Augen Opticos' activities in Tennessee; and 3) the acts of Augen Opticos or the consequences it caused make exercise of jurisdiction reasonable. <u>Intera Corp.</u>, 428 F.3d at 615 (quoting <u>S. Mach. Co.</u>, 401 F.2d at 381).

### 1. Purposeful Availment

The requirement that a party purposefully avail itself of a state's laws and benefits flows from constitutional notions of due process, and is designed to "ensure[] that a defendant will not be haled into a jurisdiction solely as a result of 'random', 'fortuitous', or 'attenuated' contacts." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 461, 475 (1985) (internal citations

---

[forms] filed with the U.S. Patent and Trademark Office on behalf of Augen." (Augen Opticos' Supp. Reply 3.)

[3]  Although Odyssey initially stated that it was unsure whether "Augen Opticos' contacts with Tennessee are continuous and systematic in nature so as to confer general jurisdiction over Augen Opticos," Odyssey's most recent filing alleges only that jurisdictional discovery "supports the exercise of specific personal jurisdiction."  (Pl.'s Resp. to Augen Opticos' Mot. to Dismiss 9, ECF No. 26; Odyssey's Supp. Reply 6) (capitalization removed).

omitted).  Purposeful  availment  can  be  found  "[s]o  long  as  a
commercial  actor's  efforts  are  'purposefully  directed'  toward
residents of another [s]tate."  Id.

The Sixth Circuit has adopted Justice O'Connor's approach
to specific jurisdiction in Asahi Metal Indus. Co., Ltd. v.
Superior Court. 480 U.S. 102, 112 (1987); see Bridgeport Music,
Inc., 327 F.3d at 479 (endorsing Justice O'Connor's approach).
Under that approach, the so-called "stream of commerce plus"
approach, "'the placement of a product into the stream of
commerce, without more, is not an act of the defendant
purposefully directed toward the forum state.'"  Bridgeport
Music, Inc., 327 F.3d at 479 (quoting Asahi, 480 U.S. at 112).

Odyssey argues that that Augen Opticos purposefully availed
itself of the privilege of acting in Tennessee or causing a
consequence in Tennessee.  Odyssey argues that Augen Opticos:
(1) marketed its products to Tennessee, (2) sold products in
Tennessee, and (3) maintained an interactive website available
in Tennessee. (Odyssey's Supp. Mem. 7, 14.)

Odyssey alleges that, as part of a national product
campaign, Augen Opticos used the infringing Augen PARASOL mark
in "several national magazines directed at the ophthalmic
industry." (Odyssey's Supp. Mem. 10.)  Taken alone, this does
not rise to the level of purposeful availment. See Bridgeport
Music, Inc., 327 F.3d at 481 n.10 (taking no position on whether

18

"nationwide advertising is sufficient for a finding of purposeful availment," but noting that other circuits have found it insufficient). Odyssey also alleges that Augen Opticos sent "targeted emails containing infringing marks to residents of Tennessee." (Am. Compl. ¶ 8.) Odyssey has submitted emails received by several Tennessee ophthalmologists. The emails state that they are from "Augen Optics" and invite the ophthalmologists to go to augenparasol.com to "learn more." (Decl. of Vickie Hickman ("Hickman Decl.") Exs. A, B, & C, ECF No. 26-3.)

Odyssey has not shown that these emails were part of a direct marketing campaign targeted at Tennessee. Augen Opticos states, and Odyssey does not contest, that these emails were sent through Jobson Medical Information, LLC as part of a national advertising campaign. (Augen Opticos' Supp. Reply 4, 6.) Odyssey argues that Augen Opticos played a role in designing the advertisements, but Odyssey has provided no authority, and this Court has found none, to the effect that emails sent as part of a national advertising campaign are sufficiently targeted to support specific personal jurisdiction. (Odyssey's Supp. Mem. 7-9.) Odyssey's claim that emails were sent to ophthalmologists is insufficient to establish purposeful availment without more evidence that Augen has "'create[d] a substantial connection'" to Tennessee. Ford Motor Co., 141 F.

Supp. 2d at 772 (quoting Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996)).

Odyssey argues that Augen Opticos' website also supports specific jurisdiction. "[M]aintenence of [a] website, in and of itself, does not constitute . . . purposeful availment." Neogen Corp., 282 F.3d at 890. However, "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interactions with residents of the state." Id.; see also Morel Acoustic, Ltd. v. Morel Acoustics USA, Inc., No. 3-:04-CV-348, 2005 U.S. Dist. LEXIS 32864, at *19-20 (S.D. Ohio Sept. 7, 2005) (concluding that, where a defendant's website "provide[d] specifications and prices, invite[d] orders, provide[d] order forms for downloading and provide[d] an e-mail link for placing orders," the defendant had purposefully availed itself of the forum state's laws).

The Sixth Circuit has recognized that websites generally have three levels of interactivity:

(1) Passive sites that only offer information for the user to access;
(2) Active sites that clearly transact business and/or form contracts;
(3) Hybrid or interactive sites that allow users to "exchange information with the host computer."

See, Inc. v. Imago Eyewear Pty, Ltd., 167 F. App'x 518, 522 (6th Cir. 2006) (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952

20

F. Supp. 1119, 1124 (W.D. Pa. 1997)).  An interactive website is a site where "one can purchase products."  McGill Tech. Ltd. v. Gourmet Techs., Inc., 300 F. Supp. 2d 501, 507 (E.D. Mich. 2004).

Augen Opticos' website is interactive because it allows customers to submit orders.  (Website for the Augen Opticos Online Order System, ECF No. 26-7 ("Augen Opticos' Online Order Form").)  Augen Opticos argues that its site is not interactive because only "existing customers" can order products, and that to use the website, "a prospective customer must complete a credit application," which is available on the same page. (Supp. Decl. of Patricia Machado ¶ 5.)   However, the website permits Tennessee residents to purchase products and solicits credit applications.  Augen Opticos' "alleged maintenance of a highly interactive website that solicits Tennessee customers is a sufficient basis to find that the defendant purposefully availed itself of acting in the forum state."  First Tenn. Nat'l Corp. v. Horizon Nat'l Bank, 225 F. Supp. 2d 815, 821 (W.D. Tenn. 2002).  Augen Opticos' website is no less interactive than the website at issue in Morel Acoustic, Ltd., which the Southern District of Ohio held provided a basis for jurisdiction.  2005 U.S. Dist. LEXIS 32864, at *20.   The website supports the conclusion that Augen Opticos has purposefully availed itself of the privilege of doing business in Tennessee.

Augen Opticos relies on the fact that Odyssey has offered only "one piece of evidence that Augen conducted any kind of business in Tennessee", a check for $64.38. That reliance is not well taken. (Augen Opticos' Supp. Reply 7-8; Check from Tri-state Muller Optical, Inc., ECF No. 70-3.) "The proper test for personal jurisdiction is not based on a 'percentage of business'," but rather whether Augen Opticos had "something more than 'random, fortuitous, or attenuated contacts' with the state." Neogen, 282 F.3d at 891-92 (quoting Burger King, 471 U.S. at 475). Because "[t]he test has always focused on the 'nature and quality' of the contacts with the forum," a website can create specific jurisdiction based on "a single contact." Zippo Mfg. Co., 952 F. Supp. At 1127. See also SSM Indus. v. Fairchild Apparel Group, Inc., No. 1:03-cv-223, 2004 U.S. Dist. LEXIS 906, at *17 (E.D. Tenn. Jan. 16, 2004)("Even a single act by a defendant deliberately directed toward a Tennessee resident that gives rise to [a] cause of action can support a finding of purposeful availment and meet the due process requirement of minimum contacts.") Augen Opticos' contacts were "deliberate and repeated, even if they yielded little revenue from Tennessee itself." Compuserve, 89 F.3d at 1265.

A "defendant's interposition of an independent middleman between itself and the forum does not by itself place the defendant outside the forum's reach." Fortis Corporate Ins. v.

22

*Viken Ship Mgmt.*, 450 F.3d 214, 220 (6th Cir. 2002). In *Tobin v. Astra Pharm. Prods., Inc.*, the court found specific personal jurisdiction because the defendant signed an exclusive licensing agreement with an intermediary to distribute its product throughout the United States of America. 993 F.2d 528, 543 (6th Cir. 1993). The defendant made "a deliberate decision to market [its product] in all fifty states" and "sought and obtained a distributor to market its product in every state." *Id.* at 444; *see also Bridgeport Music, Inc.*, 327 F.3d at 484 (upholding specific personal jurisdiction because of a nationwide distribution agreement). Augen Opticos has stated that Blue Cove is its exclusive distributor in the United States. (Prelim. Statement and General Objections 5, ECF No. 70-6.) Augen Opticos "did not simply place its product into the stream of commerce; it purposefully sought out and created a United States distributor to exploit the United States market." *Sunshine Distrib v. Sports Auth. Mich., Inc.*, 157 F. Supp. 2d 669, 789 (E.D. Mich. 2001).

Taken together, Augen Opticos' actions amount to "a deliberate undertaking" to purposefully avail itself of the privilege of doing business in Tennessee. Augen Opticos has advertised to Tennessee residents; it has caused email invitations to be sent to Tennessee residents; it has created a website to process sales to Tennessee residents; and it has sold

23

its products to a distributor who markets its products in Tennessee. The purposeful availment requirement has been met.

## 2. Arising From

The second requirement is that the plaintiff's claims "arise from" the defendant's contacts with the forum state. Air Prods. & Controls, Inc., 503 F.3d at 553. The Sixth Circuit has phrased the test for this requirement in a number of ways, including "whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts, . . . or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." Id. (internal citations omitted). Regardless of phrasing, the standard is a lenient one. Bird, 289 F.3d at 875. A cause of action need not formally arise from a defendant's contacts with the forum. Id. Rather, the test requires only "that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." Bird, 289 F.3d at 875 (quoting Third Nat'l Bank, 882 F.2d at 1091) (internal quotation marks omitted).

Odyssey meets this requirement. Neogen found that a claim for trademark violation caused a variety of harms in the plaintiff's home state, satisfying the arising from requirement. Neogen, 282 F.3d at 892. Bird found that a party's operation of an interactive website and "copyright and trademark law

violations" were "at least marginally related to the alleged contacts" between the defendant and the forum state. Bird, 289 F.3d at 876. Tennessee residents have received messages that "[the] [p]laintiff claims dilute and infringe upon its trademark." Zippo Mfg. Co., 952 F. Supp. at 1127. See also Compuserve, 89 F.3d at 1267 (finding that the claim arose in Ohio because trademark violations "occurred, at least in part, in Ohio.").

Odyssey's claims arise out of Augen Opticos' contacts with Tennessee.

### 3. Reasonableness

The third requirement for specific personal jurisdiction is that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Air Prods., 503 F.3d at 554 (quoting S. Mach. Co., 401 F.2d at 381). If the first two requirements for specific personal jurisdiction are met, an inference arises that the third requirement is also satisfied. Bird, 289 F.3d at 875. If "a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Air Prods., 289 F.3d at 554. Odyssey has shown that jurisdiction would be reasonable

and would not conflict with "traditional notions of fair play and substantial justice." Asahi Metal Indus., 480 U.S. at 113.

Augen Opticos argues that specific personal jurisdiction is unreasonable because its connection to Tennessee is "negligible at best." (Augen Opticos' Supp. Reply 9.) In fact, however, Augen Opticos has significant ties to Tennessee. Supra Section IV.b.1-2. It established an interactive website that solicited customers in Tennessee, engaged in commerce in Tennessee, and advertised there. Based on those actions, Augen Opticos could "reasonably anticipate being haled into court" in Tennessee. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Jurisdiction is also reasonable because of Tennessee's interest in protecting the rights of its citizens. See Youn v. Track, Inc., 324 F.3d 409, 419-420 (6th Cir. 2002) (noting that "the existence of federal avenues for relief" in a plaintiff's home state serves the state's interest in protecting its citizens' rights). It may be burdensome for Augen Opticos to defend itself in Tennessee, but "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." Id. at 420 (quoting Asahi, 480 U.S. at 114); see also Scott Co. v. Aventis, S.A., 145 F. App'x 109, 115 (6th Cir. 2005) (finding jurisdiction

reasonable because of the forum state's interest in resolving suit "brought by one of its residents against [d]efendants that purposefully availed themselves of acting in and causing consequences in [the forum state]."）

This Court has specific personal jurisdiction over Augen Opticos. Because it has personal jurisdiction based on Augen Opticos' contacts with Tennessee, the Court need not address whether Blue Cove is Augen Opticos' alter ego.

**V.    CONCLUSION**

For the foregoing reasons, Augen Opticos' Motion to Dismiss is DENIED.

So ordered this 26th day of September, 2011.


                              s/ Samuel H. Mays, Jr.
                              SAMUEL H. MAYS, JR.
                              UNITED STATES DISTRICT JUDGE